WILLIAM EVANS, Appellant, *v.* THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, Respondent.

A policy of life insurance contained a clause avoiding it in case the insured should visit any part of the United States lying south of a specified line, between the first of July and the first of September, without a written permit. He had a permit authorizing him to go and remain south until July 1, 1870. He remained until he died, March 18, 1872. In an action upon the policy, it appeared that the health of the deceased, in the sum-

mer of 1870, was very poor, so that he could only ride out in a buggy to his plantation and back, and was never any better. It was not proved that he was too unwell to return, or that he made any effort to do so. *Held*, (1) that if inability was an excuse and a failure to return in consequence would not have been a breach of the condition, the facts did not sustain the claim, as it did not appear that the insured was, prior to July first so unwell as to render it impossible for him to return by any of the usual modes of travel; (2) that inability was not an excuse, as when the insured went south he took the chances of his being able to return.

On the day the annual premium became due in 1870, an agent of the owner of the policy called at defendant's office to pay it. Defendant declined to receive it because the insured was residing south, unless a percentage on the amount insured was paid in addition, and agreed with the agent to continue the policy and give credit for the amount claimed until the next day. On the next day the premium and the percentage claimed were tendered, but defendant refused to receive them. Tender was also made in 1871, and refused. *Held*, that as there was no agreement to pay, binding upon the owner, the promise of defendant was without consideration and not obligatory; but that even if the agreement was binding and the tender good to keep the policy in force for a year, it did not bind defendant to continue it in force thereafter, and defendant had the right to refuse so to do.

(Argued February 18, 1876; decided February 25, 1876.)

APPEAL from order of the General Term of the Supreme Court in the second judicial department, reversing a judgment in favor of plaintiff entered upon the report of a referee. (Reported below, 3 Hun, 587; 6 T. & C., 331.)

This action was upon a policy of life insurance issued by defendant upon the life of one Charles A. Starr to one Samuel W. Leddell, a creditor of Starr's, and plaintiff's assignor. The policy was dated October 28, 1869, premiums payable annually. The policy contained these conditions, among others, that if the insured should, between the first of July and the first of September, visit those parts of the United States lying south of the southern boundaries of Virginia or Kentucky without the written consent of the company, the policy would be void and all payments forfeited. Also, that if the annual premiums were not paid on or before the days specified, the policy should cease and determine.

The referee found that on November 1, 1869, defendant gave to Starr a permit to reside in Louisiana from that time until July 1, 1870, under which permit he removed to Louisiana, about the time the permit was granted, and died there on the 18th of March, 1872, never having returned to the north on account of his health being too feeble. That on the 28th day of October, 1870 (the day on which the premium was due), said Leddell, by the hands of Theodore W. Phenix, tendered to the defendant, at its office, the annual premium, whereupon the defendant claimed a further sum of two and a-half per cent on the amount of the policy, additional premium for the extra risk incurred by the residence of Starr in Louisiana. That the said Phenix stated to said defendant that he could not pay more than the amount tendered, without the authority of Mr. Leddell, whereupon the defendant agreed to continue the policy in force and give credit for the premium due, including the extra amount demanded, until the following day, in order to give Phenix time to report the demand to Leddell, and Leddell time to comply with it. That on the said 29th day of October, 1870, Leddell tendered to the defendant the amount in full required by the company, which defendant refused to receive. That on the 27th of October, 1871, Leddell again tendered the premium with the per centage claimed, which was refused.

The only evidence as to the inability of the insured to come north was that of one witness, who testified that Starr's health, in the summer of 1870, was very poor, and he could only ride out to the plantation, in which he was interested, in a buggy and ride back, never getting out of it, and that he was never any better.

*F. G. Salmon* for the appellant. The agreement of defendant to give credit, with tender of the premium within the time allowed, was as effectual as if payment had been made in the first instance. (*Boehen* v. *Williamsburg F. Ins. Co.*, 35 N. Y., 131.) The policy was not forfeited by the insured remaining south until he died. (4 Kent's Com. [m.

p.], 125, 126, 129, 130 ; *Helme* v. *Phila. L. Ins. Co.*, 61 Penn., 107 ; *Baldwin* v. *N. H. L. Ins. Co.*, Ct. Apps. Dec., 1875 ; *Doe* v. *Banks*, 4 B. & Ad., 664 ; *Roberts* v. *Davy*, 4 id., 644 ; *Hyde* v. *Watts*, 12 M. & W., 254 ; *Sands* v. *N. Y. L. Ins. Co.*, 50 N. Y., 626 ; *Cohen* v. *N. Y. Mut. L. Ins. Co.*, id., 610.) If there was a forfeiture defendant waived it. (*Young* v. *Mut. L. Ins. Co.*, 4 Big. L. Ins., 1 ; *Bodine* v. *Exch. F. Ins. Co.*, 51 N. Y., 117 ; *Bowman* v. *Ag. F. Ins. Co.*, 59 id., 521 ; 35 id., 131 ; *Shearman* v. *Nia. F. Ins. Co.*, 46 id., 526, 530 ; *Trustees First Bap. Ch.* v. *Bklyn. F. Ins. Co.*, 19 id., 305.) The tenders of premium made were sufficient, and kept the policy in force. (*Vaupell* v. *Woodwards*, 2 Sandf. Ch., 143 ; *Stone* v. *Sprague*, 20 Barb., 509 ; *Everett* v. *Saltus*, 15 Wend., 474.)

*Edgar S. Van Winkle* for the respondent. The policy was forfeited by the insured remaining south after July 1, 1870. (*Pier* v. *Finch*, 29 Barb., 176 ; *McKyring* v. *Bull*, 16 N. Y., 297 ; *Wright* v. *Hooker*, 10 id., 51 ; *Carpenter* v. *Stevens*, 12 Wend., 589 ; *Depuy* v. *Swart*, 3 id., 139 ; *Towle* v. *Jones*, 1 Robt., 87 ; 19 Abb., 449 ; *Dusenbury* v. *Hoyt*, 4 J. & S., 94 ; *Stevenson* v. *Buxton*, 15 Abb. Pr., 352.) There was no waiver of the forfeiture by defendant. (*Ripley* v. *Ætna Ins. Co.*, 30 N. Y., 136, 164 ; *Hutchings* v. *Munger*, 41 id., 155 ; *Smith* v. *Sar. Mut. F. Ins. Co.*, 3 Hill, 508.) There was no good tender of the premium made. (1 Gr. Pr., 249, 541 ; *Wilder* v. *Seelye*, 8 Barb., 408 ; *Livingston* v. *Harrison*, 2 E. D. S., 197 ; 3 Chit. Pldgs., 955, 1018 ; *Simpson* v. *French*, 25 How. Pr., 464.)

Earl, J. The policy contained a provision that it should be " void, null and of no effect," in case Starr, whose life was insured, should, between the first day of July and the first day of November in any year, visit any part of the United States lying south of the southern boundaries of Virginia and Kentucky without the written consent of the company. In November, 1869, he went to Louisiana and remained there

until he died, on the 18th day of March, 1872. The defendant alleged this as a breach of the policy and refused payment upon this ground. He had the written permit of the defendant to go to New Orleans and remain there until the 1st day of July, 1870. The claim on behalf of the plaintiff is that he became so sick and feeble that he could not return, and hence that his return was rendered impossible by the act of God, and that, therefore, his absence was excused and there was no breach of the policy. Even if this claim were otherwise valid the facts do not sustain it. The only proof upon the subject is that he met with an accident before going south; that his health was very poor in the summer of 1870, and "he could only ride out to the plantation in which he was interested in a buggy, and ride back, not getting out of it, and was never any better." No witness testified that he was too unwell to return north or that he made any effort to return, and his condition before July first was not described. To bring the case within the supposed rule there should have been proof that for some time before July first he was unable to travel by any of the usual modes; not that it was merely inconvenient for him to travel, but impossible. He was bound to return if he could travel by short stages, or by incurring unusual expense to secure comfort, safety and convenience. But another answer to this claim is that he took the chances of being able to return. He went south for business purposes, knowing that the policy would be avoided if he did not return by the first day of July. He had the right to go and remain there until July first without the permit of the company. He obtained that that he might, without violating another condition in the policy, go and return upon the ocean if he desired to. He was feeble when he went and he could not go so far south that he could not return, and after remaining there until he was too feeble to return enable the holder of the policy to claim that his return was rendered impossible by the act of God, and that thus the breach of the condition was excused.

The policy, therefore, became absolutely void after July 1,

1870. It was unnecessary for defendant to make any election or to do any thing else to render it void. It became dead by its own terms, and could never again have any vitality except by some sufficient act of the defendant reclothing it with life. The claim of the plaintiff is that it was revitalized by what took place on the 28th and 29th days of October, 1870. On the former day an agent of plaintiff's assignor went to the office of the defendant and offered to pay the annual premium and tendered the amount to defendant's officers. They declined to receive it on account of the residence of Starr in Louisiana, unless he would pay two and a-half per cent more on the amount insured on account of the extra risk occasioned by such residence. The agent then stated that he could not pay the extra sum claimed without the authority of his principal, whereupon the officers agreed to continue the policy in force and give credit for the premium due, including the extra amount claimed, until the following day, in order to give the agent time to report to his principal and his principal time to comply. On the next day plaintiff's assignor sent another agent to the office of the defendant and he then tendered the amount of the premium, together with the extra amount as claimed on the prior day, and the officers refused to receive it, claiming that the policy was void.

Assuming that the policy was kept in force for the one day by what took place on the twenty-eighth, there was nothing to extend its existence beyond that day. There was no bargain then made to continue it longer. Plaintiff's assignor did not agree to pay and was not bound to. It was at most on the part of the defendant a proposition to revive the policy on the twenty-ninth, upon payment of the sum named. In other words, it was a proposition to enter into an engagement on the twenty-ninth. That proposition did not bind either party, and the defendant had the right on the twenty-ninth to refuse to receive the money and decline the engagement it had offered to make.

But suppose defendant was bound to receive the sum tendered on the twenty-ninth for the year following that date,

and that the policy was thus in force during that year, how was it kept in force after October 28, 1871? What took place in October, 1870, certainly did not bind the defendant to a new policy during the whole life of Starr. It did not give him a permit to continue in the south as long as he chose to stay there, and entirely annul the condition in the policy as to a southern residence. The defendant, therefore, had the right in October, 1871, to refuse to continue the policy any longer, notwithstanding what had before taken place.

The order of the General Term must be affirmed, and judgment absolute entered against the appellant, with costs.

All concur; CHURCH, Ch. J., on the ground last stated.

Order affirmed, and judgment accordingly.