## MUTUAL BENEFIT ASSOCIATIONS.

[Common Pleas Court of Hamilton County.]

MARGARET BENNETT V. PHOENIX COUNCIL, No. 85, JUNIOR ORDER
OF UNITED AMERICAN MECHANICS.

Decided, February 5, 1904.

*Funeral Benefits—Widow Entitled to, When—Dues Paid in Lump Sums
—By-Law Against Payment of Benefits During Last Illness to One
in Arrears When Illness Began not Unreasonable.*

1. Where a member of a mutual benefit association falls ill while in
good standing with his dues paid up to the date of his illness, and
after being ill a number of months dies with his dues paid up
to the date of his death, his widow is entitled to the funeral benefits
allowed to members in good standing, although during the de-
ceased's last illness his dues were paid from time to time in lump
sums instead of weekly, as called for by the by-laws of the order.
2. A by-law of a mutual benefit association which provides that any
member who is in arrears and becomes ill shall not be entitled to
receive benefits from the association during his last illness, even
though he should pay up all his back dues, is a reasonable by-law
and not void on the ground that it is unequal or because it is
vexatious or manifestly detrimental to the interests of the society.

LITTLEFORD, J.

This action was brought by Margaret Bennett, the widow of
Cornelius Bennett, against The Phoenix Council No. 85, Junior
Order of United American Mechanics, to recover $250 as death
benefits.

The case was submitted to the court without the intervention of
a jury, and the court is of the opinion that the plaintiff is en-
titled to a verdict for $250, with interest from May 22, 1901, the
date of Bennett's death, up to the 4th day of January, 1904, the
first day of this term of court.

The reasoning by which I reach this conclusion is quite simple,
as will presently appear.

Having decided that the plaintiff is entitled to a verdict as
prayed for in the petition there is nothing else which the court
is really called upon to decide.

But counsel on both sides of the case have raised another question, and although it is not necessary to determine this point, if the reasoning is correct by which the court reached the conclusion that the plaintiff is entitled to a verdict, still the court will give its views upon this other point because of the nicety with which it was argued by counsel upon both sides, and because requested to do so by counsel for defendant.

To return to the finding of the court in favor of the plaintiff, I find the facts to be as follows:   Cornelius Bennett was initiated into the order October 7, 1899, and died May 22, 1901, as the result of sunstroke.   I find that on the 11th day of August, 1900, he was ill with the sickness of which he died; that on that date his illness was such as to prevent his following his usual occupation, because he could not go out; and that his dues up to and including Saturday, August the 11th, were paid.   That he was ill appears from the letter written to him by Holzhauser, Councilor and presiding officer of the order at that time, and ex-officio member of the relief committee; and the expression in this letter of the hope that Bennett "will soon be able to attend the council" is sufficient (there being no evidence to the contrary) to justify the finding that he was on this date too ill to follow his usual avocation.

After the 11th day of August, 1900, Bennett's dues up to the time of his death were not paid regularly each week, but they were paid in lump sums from time to time, so that when he died he was not only paid up but was paid somewhat in advance.

There is no by-law of Phoenix Council No. 85, the defendant, nor of the State Council of Ohio of the Junior Order of United American Mechanics, which is to the effect that Bennett's widow was not entitled to the death benefit because Bennett's dues during his last illness were paid in lump sums instead of weekly, he having been in good standing at the time he fell ill.   Even if there were a by-law to that effect, it would be unreasonable, illegal and void, according to two well considered New York cases—*Ferguson v. Austin*, 1 City Court, 53, and *Nelligan v. New York Typographical Union No. 6*, 2 City Court, 251.

The widow is therefore entitled to the death benefit with interest, as stated above, in my opinion.

I come now to the question referred to above, the determination of which is unnecessary as the court understands this case, that is, whether or not Article XXI, Section 1, of the local by-laws, is so unfair and unreasonable as to be void. I am of opinion that it is not void. The section is as follows:

"Section 1. Any member who shall allow himself to become in arrears for dues, and shall become sick or disabled, and apply for the benefits of this council, shall not be entitled to receive said benefits during such sickness or disability, even if he should pay all his indebtedness; nor shall he, in case of death, be entitled to funeral benefits."

It is conceded in all the decisions that by-laws in associations of this kind which are "unequal, vexatious, oppressive, or manifestly detrimental to the interests of the society"—using the words of 1 Bacon on Benefit Societies, Section 85—"are void." But is this a by-law of that sort?

Counsel for plaintiff has very ably argued that it is, and counsel for defendant with equal force has maintained that it is not.

And first as to just what the law means. It seems to me to say that any member who is in arrears for dues and becomes sick while he is thus in arrears shall not be entitled to benefits.

Now, the operation of this law may be somewhat unequal in certain cases, and it is certainly vexatious to members who fall behind in their dues. I can not see that it is oppressive to any one. It is certainly not "manifestly detrimental to the interests of the society," but quite the contrary. There was evidence tending to show that before this rule was enforced, only a small percentage of the members paid their dues promptly; whereas since the rule it was just the other way.

In my opinion the great good which would result to the society by reason of this rule in compelling members to pay their dues promptly completely outweighs any objections to its operation. I do not think the vexation of members who do not help the society when they are well, but claim its benefits in the time of sickness, ought to be given very great weight; and I think that the general welfare and success of a charitable association of this kind ought to be given great weight.

Of course, if some other and milder method of making members pay their dues could be thought of, then I should say that so heavy a penalty as that enforced by this rule would make it an unreasonable rule and therefore void. But what other way is there to make members pay their dues?

If there is no penalty at all put upon the non-payment of dues, then all members would soon fall into the way of paying up only in case of sickness. Some method of enforcing payment of dues must be followed, and there are only three methods that I can think of.

If a man who is in arrears falls sick, you can let him pay his dues during his sickness to avoid suspension, which may take place in thirteen weeks and must take place in twenty-six weeks, according to the rules of the association. At the same time you can refuse to pay him any benefits, merely allowing him the privilege of paying dues to avoid suspension. That is the plan laid down by this Section 1 which is under discussion.

Or if a man falls sick when he is in arrears, you can refuse to receive his dues on the ground that it is not right to take his dues and pay him no sick benefits. In this case, if his illness lasted long enough he would be suspended in the course of time; and then after he got well and paid up his dues he would be in the position of a member who had just joined—not entitled to any benefits for several months after reinstatement.

In the third place, if a man falls sick while he is in arrears you can let him pay up his back dues and receive sick benefits the same as any member who has always regularly paid his dues.

I think the last method is unreasonable because it would possibly in the end destroy the association. I think the second method spoken of would be reasonable, for a by-law was held to be reasonable in New York which deprived a man of benefits for six months after reinstatement (*Hart* v. *Adams Association No. 51*, 75 N. Y. Supplement, 110). This case, in the appellate division of the New York Supreme Court, was decided by a full bench of five judges, and although the contrary holding was made by the same judges in the 78 N. Y. Supplement, page 85 (apparently overlooking their previous decision), I think the opinion in the 75 N. Y. Supplement is better considered than the later opinion.

If it be conceded that the second method set forth above is a reasonable way of compelling members to pay dues, it must then be admitted that the first is a more reasonable method; and the first is the method adopted by the council in this case.

Notwithstanding the care with which the researches of counsel in this case were evidently made, no case just like the one in hand has been found. New York has the most decisions in cases of this kind, but as pointed out above the appellate division of the Supreme Court seems to have disagreed with itself in the premises. In view of the scarcity of satisfactory decisions, it seems to me the best thing to do is to simply reason the matter out; and as I have reasoned it out, this by-law is a reasonable one and should be upheld. It should be remembered that to hold a by-law void it must be *clearly* unreasonable (1 Bacon on Benefit Societies, Section 87).

*John R. Holmes,* for plaintiff.

*Rogers Wright,* for defendant.