## Julia Wall, Appellee, v. Brotherhood of Painters, Appellant.

### Gen. No. 5508.

1. FRATERNAL BENEFIT SOCIETIES—*when provision for suspension self-executing.* A provision in the constitution of a fraternal benefit society is self-executing which provides that if a member be indebted for dues for a certain period he shall stand suspended without vote being taken to that effect.

2. FRATERNAL BENEFIT SOCIETIES—*what does not waive suspension.* The acceptance of premiums after a suspension has automatically been effected, does not waive the suspension in the absence of evidence showing intention of waiver.

Assumpsit. Appeal from the County Court of Peoria county; the Hon. CLYDE E. STONE, Judge, presiding. Heard in this court at the April term, 1911. Reversed with finding of facts. Opinion filed October 13, 1911.

JACK, IRWIN, JACK & MILES, for appellant.

STEVENS, MILLER & ELLIOTT, for appellee; H. O. MORGAN, of counsel.

MR. JUSTICE WILLIS delivered the opinion of the court.

This is a suit in *assumpsit* brought by Julia Wall, widow of Henry Wall, deceased, in the County Court of Peoria county to recover benefits under his membership in the Brotherhood of Painters, Decorators and Paper Hangers of America. The Brotherhood is a union as well as a beneficiary society, and is affiliated with the American Federation of Labor and National Building Trades Council. No benefit certificate was issued, but each member had a book in which payments of monthly dues were entered, and also had a union card. The declaration contained the common counts and a special count setting up verbatim sections 27, 46, 93 and 100a of the constitution, and averred

that Wall, up to the time of his death, May 7, 1909, had continuously been a full beneficial member in good standing for more than seven years before his death; that he died without naming any beneficiary; and that his widow was entitled to benefits; that a claim was made in accordance with the rules of the Brotherhood, and payment refused. Accompanying the declaration was an affidavit stating that her claim was for a death benefit of $250 principal and $12.50 interest. The Brotherhood interposed a plea of *non-assumpsit* and gave notice that on the trial it would offer in evidence sections 27, 46 and 93 of the constitution, and filed an affidavit which stated that by failure to comply with the requirements of said sections, Wall stood suspended and was not in continuous good standing during the period of six months immediately preceding his death. At the close of all the evidence the court refused an instruction directing a verdict for the Brotherhood. A trial resulted in a verdict for $270.29. A motion for a new trial was made, a *remittitur* of $3.13 was entered, the motion for a new trial was denied, judgment was entered for $267.16, and the Brotherhood prosecutes this appeal. Appellant contends that the court below erred in refusing to direct a verdict; in giving the instructions requested by appellee; in refusing to give instructions requested by appellant; in modifying an instruction requested by appellant and in giving the instruction so modified, and in overruling a motion for a new trial.

From the view we take of the evidence it will be necessary to consider appellant's first contention only. Sections 27 and 100a of the constitution set out in the special count and referred to in the notice, need not be further mentioned. Section 93 of the constitution gives the wife of a full beneficial member at his death a benefit of $250 on a membership of between seven and ten years, "provided the member has not been indebted for an amount equal to 3 months' dues, but

has been in continuous good standing during the period immediately preceding his death." Wall died May 7, 1909, more than seven years after he became a member of the Brotherhood. His membership book was introduced in evidence. It showed that the dues for December, 1908, were paid March 3, 1909; that the dues for January and February, 1909, were paid March 31, 1909; that the dues for March, 1909, were paid April 21, 1909, but it did not show payment of a reinstatement fee. No section of the constitution was introduced showing when dues were payable, but oral testimony was admitted without objection that they were due on the first Wednesday of each month. Therefore, the dues for December were due on Wednesday, December 2, 1908; the dues for January were due on the first Wednesday in January, and the same is true for February and March, 1909, and Wednesday, March 3, 1909, when the payment for March was due, the dues for the three preceding months had not been paid. The 46th section of the constitution provides: "Any member indebted for 3 months' dues shall stand suspended, a vote of the L. U. not being required to suspend him. His membership book shall be deemed sufficient notice of arrears and no further notice be required from the financial secretary." This section is plainly self-executing or automatic. Lehman v. Clark, 174 Ill. 279; National Union v. Shipley, 92 Ill. App. 355; Dillon v. National Council, 148 Ill. App. 121; Taufer v. Brotherhood, 122 N. Y. Supp. 527; Freckmann v. Supreme Council of Royal Arcanum, 70 N. W. 1113; Field v. National Council of Knights and Ladies of Security, 89 N. W. 773. By the failure of Wall to pay the December, January and February dues until in March, 1909, all his rights under his membership in the Brotherhood were suspended *ipso facto,* without any act of any kind by anyone else to complete such suspension. National Council v. Burch, 126 Ill. App. 15; Dillon v. National Council, *supra.*

Appellee's contention is that because there is no rec-ord of the collection of the $1 reinstatement fee the acceptance of arrearages amounted to a waiver of the automatic suspension.

In Field v. National Council, *supra,* the court said, quoting from the decision of the Supreme Court of Nebraska: "The doctrine of waiver, which is often appealed to, to prevent forfeitures in the case of policies of insurance, has no application to the forfeitures of memberships in these orders. The laws and rules governing the different branches of such an order are in the nature of contracts among all the members, and considering the widespread extent of these organizations, and the very great extent to which these schemes of benevolence have taken the place of life insurance, especially among the working classes, it is highly important as a principle of public policy, that in cases of this kind their rules and regulations should be substantially upheld by the judicial courts. State v. Temperance Benevolent Association, 42 Mo. App. 485; Karcher v. Supreme Lodge, 137 Mass. 368; Hall v. Supreme Lodge, 24 Fed. 450; Rood v. Association, 31 Fed. 62." To the same effect are Royal League v. Moerschbaecher, 88 Ill. App. 89, afterwards affirmed in 188 Ill. 9.

There is nothing in the record to show that it was intended by accepting the payments to waive the requirements of section 46 of the constitution, which provides: "A suspended member shall not again be placed in benefits until 6 months from the date of settling in full all arrearages." It is no doubt true that the acceptance of the arrearages by the secretary would effectuate a valid reinstatement, but this would not contravene the express terms of section 46, which says: "Failure of the financial secretary to report suspension or collect reinstatement fees shall not constitute a waiver of default nor entitle the member to benefits for period prior to such payment of arrearages."

Such reinstatement, by section 46, precluded him from benefits for the period of 6 months thereafter, within which time he died. It is clear to us that the acceptance of arrearages was not a waiver of the requirements of section 46, and that at the time of his death he had not been in continuous good standing during the period of six months immediately preceding his death. Not being entitled to benefits when he died, appellee, as the widow, cannot recover, and the court erred in refusing to direct a verdict for appellant.

*Reversed.*

Finding of facts, to be incorporated in the judgment:

We find from the evidence under the constitution of the Brotherhood that Henry Wall was not in the benefit class at the time of his death, and that his widow is not entitled to benefits.